UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Christopher Fekos, | ) | CASE NO. 4:12cv2325 |
| | ) | |
| Petitioner, | ) | Judge Jeffrey J. Helmick |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | & ORDER |
| Joe Coakley, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is *pro se* petitioner Christopher Fekos's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Petitioner is an inmate confined at the Federal Satellite Low in Elkton, Ohio and names F.S.L. Elkton Warden Joe Coakley as Respondent. Petitioner complains the respondent refuses to transfer him to a prison that will accommodate his religious needs.

BACKGROUND

While Petitioner was previously incarcerated at the Federal Correctional Institution in Elkton, Ohio, he advised the staff that he was a devote follower of the Greek Orthodox faith. Although the prison staff promised to accommodate his religious needs, they noted it would not be possible to provide him worship time in the chapel. As an alternative, Petitioner's personal spiritual representative was permitted to hold a "sacrament service" twice a year in the institution's visiting room. The only individuals present during these services were the chaplain's staff, Petitioner's spiritual advisor and Petitioner. All items used during the service were furnished or purchased by

1

Petitioner's spiritual advisor.

On January 21, 2010, Petitioner was transferred from FCI Elkton to FSL Elkton. The prison continued to provide the same sacrament services. Petitioner learned, however, that other religious groups who had "fewer followers" were permitted worship time in the institution's chapel. Moreover, these prisoners were permitted to purchase religious items with institution funds.

Petitioner sought equal access to the chapel and began the process of exhausting his administrative remedies on November 7, 2011. He requested weekly visits to the chapel for worship services and to arrange for pastoral services either by contract or through a community volunteer. Finally, Fekos requested authorization to use institution funds to purchase worship items. Three days after Petitioner filed his request the chaplain responded: "I'll attempt to find an orthodox minister for you." (Doc. No. 1, Ex. A.) In the response to his appeal to the unit team, Petitioner was advised that efforts were being made to recruit an orthodox priest. (Doc. No. 1, Ex. B.) The prison chaplain also wrote a letter to Petitioner advising him that letters of invitation were sent to Greek Orthodox churches "in the immediate area of Elkton, Ohio." (Doc. No. 1, Ex. G.) In the interim, the chaplain suggested Petitioner submit "an order requesting Greek Orthodox accouterments." *Id.*

Fekos complains he has only been provided two one-hour visits from Greek Orthodox clergy since he first initiated his request for a religious accommodation. Further, even though he submitted a list of objects he needed to "properly celebrate his faith," the services were "devoid" of items required for a traditional Greek Orthodox service. To date, Petitioner claims he has not received any of the items he submitted to the chaplain. Instead, he has only received three worship boxes provided by the institution's contract clergy. Fekos believes the prison is unwilling to provide him reasonable access to allow him to participate in his religious beliefs. Therefore, he concludes the only reasonable remedy would be a transfer to the Federal Prison Camp in Morgantown, West

2

Virginia. The FPC Morgantown is within 500 miles of Petitioner's release residence and he claims he would have access to Greek Orthodox churches in the area.

## DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 2241, it provides: "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). I may dismiss the Petition at any time, or make any such disposition as law and justice require, if I determine the Petition fails to establish adequate grounds for relief. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (holding district courts have a duty to "screen out" petitions lacking merit on their face under Section 2243); *see also* 28 U.S.C. § 2243.

Section 2241 only extends its reach to challenges that affect the length or duration of a prisoner's sentence. Thus, to the extent a prisoner claims the BOP is improperly executing or interfering with the manner in which his or her sentence is being served, the prisoner shall file a petition in the court having jurisdiction over his or her custodian. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998) (citing *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991)).

The Sixth Circuit has held that a prisoner's proper custodian, for purposes of habeas review, is the warden of the facility where he or she is being held. *See Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2004) (as a general rule, a petitioner should name as a respondent to his habeas corpus petition the individual having day-to-day control over the facility in which petitioner is being detained). Therefore, Petitioner has named the proper respondent in this action, his current custodian - the warden at F.S.L. Elkton. While this Court has personal jurisdiction over Petitioner's custodian, Fekos is not entitled to habeas relief for the reasons stated below.

### B. Religious Accommodation Claim

3

It is only when a prisoner demonstrates he "is in custody in violation of the Constitution or laws or treaties of the United States," that habeas relief is available. 28 U.S.C. § 2241(c)(3). Fekos's claim that F.S.L. Elkton has failed to accommodate his religious needs directly addresses the conditions of his confinement, and does not entitle him to relief under § 2241. *See Nelson v. Campbell*, 541 U.S. 637 (2004). As the Supreme Court has explained, "constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core [of habeas corpus] and may be brought pursuant to § 1983 in the first instance." *Id.* at 643; *cf. Adams v. Bradshaw,* 644 F.3d 481 (6th Cir. 2011) (death–row inmate's method–of–execution challenge was cognizable on federal habeas corpus petition, because, in absence of acceptable alternative procedure, inmate's claim, if successful, could render his death sentence effectively invalid).

Nothing in Fekos's petition before this Court affects the length of his term of confinement. He is not requesting an early release from prison as an accommodation, nor is he claiming the Respondent's action has affected the length of his confinement. Therefore, when a prisoner's request for relief is driven by the circumstances of confinement, his claim should be brought as a civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971); *see Muhammad v. Close,* 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus[;] ... requests for relief turning on circumstances of confinement may be presented in a § 1983 action."). As pleaded, Fekos's religious accommodation claim does not allege any grounds upon which he would be entitled to relief under § 2241.

**C. No Right to Prison Transfers**

Whether it is proper to seek a prison transfer pursuant to § 2241 or in a civil rights action need not be determined in this action because Petitioner fails to state a claim under either source.

Fekos maintains his religious needs can only be accommodated by a prison transfer to FCI Morgantown because it is closer to his release residence, where he would have ample opportunities to participate in his faith.[1]

The BOP's refusal to transfer to Petitioner to FCI Morgantown does not establish he is being held in violation of the Constitution. Prisoners generally have no liberty interest in their placement or classification while incarcerated. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). To establish the existence of a liberty interest, a prisoner must show he has been subjected to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," *see Sandin v. Conner*, 515 U.S. 472, 484 (1995), or that the government's action "will inevitably affect the duration of his sentence." *Id.* at 487. Petitioner has made neither showing. Therefore, without a liberty interest at stake, Fekos cannot assert any "right" to be transferred to a particular prison. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (transfers and prison assignments are functions wholly within the discretion of the BOP).

## CONCLUSION

For the foregoing reasons, the Petition is dismissed pursuant to 28 U.S.C. § 2243, but without prejudice to any civil rights complaint Petitioner may seek to pursue in the future. The Court certifies that an appeal from this decision could not be taken in good faith.[2]

**So Ordered**.

s/Jeffrey J. Helmick
*United States District Judge*

---

[1] Although Petitioner suggests a transfer closer to his residence would accommodate his religious needs, his request is ultimately one for a nearer release transfer. Under BOP policy "[i]nmates *may be considered* for a nearer release transfer only after serving 18 consecutive months of clear conduct in a general population." (BOP P.S. §5100 Chapter 7, p.4)(emphasis added). Because Petitioner does not disclose whether he qualified for such a transfer, however, the court's analysis will only address the extent to which any prisoner has right to be transferred to a prison of his choice.

[2] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."